GRIFFIN GROCERY COMPANY *v.* McBRIDE, RECEIVER.

4-9341                                   235 S. W. 2d 38

Opinion delivered December 11, 1950.

Rehearing denied January 15, 1951.

*O. E. Williams,* for appellant.

*Price Dickson,* for appellee.

DUNAWAY, J. Appellant, Griffin Grocery Company, filed a claim with appellee, McBride, receiver for Vita-O-Ray *Milling* Company, for damages claimed to be due on account of an alleged breach of a covenant to surrender possession of a building in good condition in Fayetteville, Arkansas, in accordance with the terms of a lease agreement between appellant and the Milling

Company. The claim was disallowed by the receiver, and the disallowance approved by the Chancellor. Hence this appeal.

A chronological statement of the events preceding the filing of the claim for damages will simplify consideration of the legal questions involved.

On July 1, 1939, appellant, owner of the business building in question, entered into a lease agreement with Vita-O-Ray *Products* Company. It appears that this lease was for a five-year term, with option to renew. Although the record does not reflect the exact date, about 1941 the Products Company went into bankruptcy. Sometime thereafter the Milling Company was incorporated to carry on the same type of business, with I. G. Fullington and other members of his family as principal officers and stockholders, as they had been in the bankrupt concern. The new company continued to occupy the building and paid rent as stipulated in the lease of July 1, 1939.

Beginning in February, 1943, Fullington wrote several letters to appellant asking for a renewal of the lease which was to expire July 1, 1944. Appellant claims to have had no knowledge of the bankruptcy and dissolution of its original tenant.

On November 1, 1943, a new lease was executed between appellant and the Milling Company. Although appellant contends that this lease was identical with the old one and simply a renewal thereof, this does not appear from the record. Nor is there any evidence that there was ever any assignment of the Products Company lease to the Milling Company, prior to the execution of the lease of November 1, 1943.

The Milling Company remained in possession of the premises until January 6, 1949, when it was adjudicated insolvent and appellee was appointed receiver. Prior to this, appellant had sold the building to J. K. Gregory on November 9, 1948.

The damage complained of resulted chiefly from the cutting of holes in the floors of the building for the instal-

lation of various pieces of machinery. In addition there was proof of broken windows and water damage caused by the stoppage of drains as a result of improper removal of debris.

The Chancellor found that most of the damage was done by the Bankrupt Products Company and held that the Milling Company was not liable therefor. The court further held that appellant, having sold the building to Gregory without reserving any claim for damages to real estate, had no allowable claim against the Milling Company.

Appellant's claim was predicated upon the provision in the lease agreement in which the Milling Company covenanted that ". . . at the expiration of the time mentioned in this lease, peaceable possession of the said premises shall be given . . . in as good condition as they now are, the usual wear, inevitable accidents and loss by fire excepted . . .".

Appellant's argument for reversal is that the Milling Company assumed the benefits of the lease and is therefore liable for the obligations thereunder of the bankrupt company. It is true, of course, that one corporation may become liable to discharge the obligations of another, either by express agreement or by reasonable implication from all the facts and circumstances when a new corporation takes over the property of an old one. *Good* v. *Ferguson & Wheeler Land, Lumber & Handle Company,* 107 Ark. 118, 153 S. W. 1107; *Meeks* v. *Ark. Light & Power Company,* 147 Ark. 232, 227 S. W. 405.

In the case at bar there was no express agreement shown, and as already pointed out there was no assignment of the original lease. While it is contended that the new corporation was no more than the old one with a new name, the proof in the case does not establish this. No more is shown than that the two corporations occupied the same building and had some officers and stockholders in common. This does not meet the test of the cited cases for establishing assumption of liability by implication.

Therefore, the Milling Company's covenant to surrender the premises "in as good condition as they now are" was referable to the condition of the building at the time of letting under its lease of November 1, 1943. There is no proof of damage after this time.

The Chancellor was also correct in disallowing the claim of appellant on the other ground stated in the order appealed from. A covenant to surrender premises in a specified condition, as distinguished from a covenant to make repairs, is not breached until failure to deliver possession in the required condition upon termination of the lease. *City Hotel Co.* v. *Aumont Hotel Company,* Texas Civ. App., 107 S. W. 2d 1094; *Tiffany, Landlord and Tenant,* § 118d. Such a covenant runs with the land and the benefit thereof passes upon a transfer of the reversion. *Tiffany, Landlord and Tenant,* § 118f.

At the time the Milling Company surrendered possession of the building appellant had no interest in the property.

Affirmed.

### On Motion for Rehearing.

PER CURIAM. In a petition for rehearing the appellant insists that it is the proper party plaintiff for the reason that it did not execute its deed to Gregory until January 3, 1949, after the lease had been terminated by notice to the lessee in the preceding November. But the pivotal date is that on which the lessee surrendered possession, because the lessee could have complied with its covenant by restoring the building to its original condition at any time before giving up possession. Even though the appellant attempted to regain possession in November it is undisputed that the tenant did not in fact relinquish possession until February 1, 1949. Hence any cause of action that might then have arisen could not have been vested in the appellant, since it had already sold the property to Gregory.

Rehearing denied.